Albert GODOWN, Petitioner,

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.

Decided Dec. 30, 2002.

Nancy P. Schuster, Bristol, for petitioner.

Mark J. Newell, Philadelphia, for respondent.

BEFORE: FRIEDMAN, J., LEADBETTER, J., and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Albert Godown petitions this court to review the order of the Department of Public Welfare (Department) that affirmed a hearing officer's decision that Godown is ineligible for nursing home benefits because Godown and his wife transferred their residence to their children for a nominal amount approximately fifteen months before Godown applied for medical assistance (MA). The issue before this court is whether the Department erred in concluding that Godown transferred his property in order to qualify for MA. We affirm.

In March of 2000, Godown and his wife transferred ownership of their residence and commercial property to their children for consideration in the amount of one dollar. At that time, Godown, who was approximately 77 years old, needed a walker and used a motorized cart to traverse his property. Following the transfer, Godown and his wife resided in an apartment on the property and their children resided in the main residence. On July 12, 2001, Godown suffered a stroke, which rendered him unable to care for himself. Godown's wife was also unable to care for Godown because she was legally blind and suffered from diabetes, peripheral neuropathy, and heart disease. Godown did not attempt to sell the property. Rather, in August of 2001, he applied for MA. Godown's application for benefits indicated that the property had been transferred the year before, and at the time of the transfer, the property had a fair market value of $500,000.

When the County Assistance Office (CAO) learned of the transfer, it gave Godown's children the opportunity to transfer the property back to their parents. The children refused, however, because they had obtained a $100,000 mortgage on the property. The CAO then denied Godown MA on the basis that he had transferred property valued at $500,000 for less than fair consideration. Godown appealed and a hearing followed. Of note, the evidence of record demonstrated that the Godowns' property consisted of approximately 10 acres upon which the main residence was situated, along with a commercial greenhouse with an apartment below it. Mrs. Godown testified that she had been gravely ill prior to the transfer of the property and that the property was transferred to the children so that it could remain in the family. According to Mrs. Godown, she was declared legally blind in 1999. She also testified that since 1997, Godown had used a walker and was able to do some work in the greenhouse prior to his stroke.

Based upon the record and the applicable regulations, the hearing officer concluded that Godown was ineligible for MA due to the transfer of the property for less than fair consideration. Specifically, the hearing officer opined:

> While [Godown] argues that the transfer of property occurred to keep the property within the family, [Godown] certainly should have anticipated a need for nursing home care considering his age and deteriorating condition. At the time of the transfer of property, [Godown] was 77 years old and required the assistance of a walker and motorized

cart to move about the property. Because [Godown's] disability was not unexpected, [Godown] failed to rebut the presumption that the property was disposed of to qualify for medical assistance.

The Department affirmed and the present appeal followed.

As this court observed in *Ptashkin v. Department of Public Welfare,* 731 A.2d 238, 240 (Pa.Cmwlth.1999), the Medicaid program, which is found in Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396r, provides federal financial assistance to states choosing to reimburse needy persons for certain medical expenses. Assistance may be provided to individuals deemed to be "medically needy," such that their income and resources are insufficient to meet necessary medical costs. 42 U.S.C. § 1396a(a)(10)(C). States providing assistance must establish eligibility standards for the medically needy. 42 U.S.C. § 1396a(a)(17). Pursuant to Section 442.1 of the Public Welfare Code,[1] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 442.1, the Department is authorized to and has established eligibility standards. *See* 55 Pa.Code Chapter 178, Appendix A (providing that a MA applicant is eligible for MA if he/she has available resources of $2,400 or less). Under the statutory scheme, the Department is the payer of last resort. 55 Pa.Code § 178.6(a).

The Department's regulations provide that if an applicant disposes of assets for less than fair market value within thirty-six months of applying for MA (often re-ferred to as the "look-back period"), the applicant will be temporarily ineligible for MA. 55 Pa.Code. § 178.104(b), (c). The duration of the ineligibility is equal to the number of months of average nursing home care that the transferred assets could have purchased. 55 Pa.Code § 178.104(c). An applicant who transferred assets for less than fair market value will not be ineligible for MA if the applicant can demonstrate, *inter alia,* that he/she intended to dispose of the assets for fair market value or other valuable consideration, that the transferred assets have been returned to the applicant, or that the assets were transferred exclusively for a purpose other than to qualify for MA. *Id.* at subsection (e)(3).

■ It is important to note that under the applicable statute, regulations and caselaw, the MA applicant bears the burden of demonstrating eligibility for MA; this includes the burden to demonstrate that transfers of assets during the look-back period were made for fair market value or exclusively for a purpose other than to qualify for MA. *Pyle v. Department of Pub. Welfare,* 730 A.2d 1046, 1049 (Pa.Cmwlth.1999) (citing *Ptashkin* ).[2] Moreover, when reviewing an application for MA, the Department is entitled to presume that assets disposed of for less than fair market value during the look-back period were transferred in order to qualify for MA. 55 Pa.Code § 178.104(a); 55 Pa. Code § 178.105. *See also Perna v. Department of Pub. Welfare,* 807 A.2d 310, 314 (Pa.Cmwlth.2002); *Dempsey v. De-*

---

**1.** Section 442.1 was added by the Act of July 31, 1968, P.L. 904.

**2.** *See also* Section 1404(a) of the Public Welfare Code, *as amended,* 62 P.S. § 1404(a) (providing that if applicant disposed of or transferred ownership interest in any property, real or personal, within two years preced-ing the application for benefits, "the recipient must disclose the nature of the transfer and must demonstrate that it involves, a bona fide arm's length transaction resulting in compensation paid to the transferor in an amount equal to or greater than the fair market value of the property . . . .").

*partment of Pub. Welfare,* 756 A.2d 90, 95 (Pa.Cmwlth.2000); *Pyle,* 730 A.2d at 1049. The applicant bears the burden of rebutting the presumption, 55 Pa.Code § 178.105(a),[3] with evidence pertaining to: (1) the purpose of the transfer; (2) any attempts to dispose of the asset for fair market value; (3) the reason for accepting less than fair market value of the asset; (4) the plans for self-support following transfer of the asset; and (5) the applicant's relationship to the individual to whom the asset was transferred. *Id.* at subsection (c). If the applicant fails to rebut the presumption that the assets were transferred to qualify for MA, the applicant will be disqualified from receiving MA for the appropriate period of time.

■ On appeal, Godown argues that the Department erred in concluding that he transferred his property to his children in order to qualify for MA.[4] In conjunction with this assertion, Godown notes that 42 U.S.C. § 1396p(c)(1)(A) states that the state plan "must provide that if an institutionalized individual or [his /her] spouse ... disposes of assets for less than fair market value on or after the look-back date ... the individual is ineligible for medical assistance...." However, as Godown correctly notes, the federal scheme (as does the regulatory scheme in place in Pennsylvania) provides that an individual shall not be ineligible for MA pursuant to § 1396p(c)(1)(A) if "a satisfactory showing is made to the State ... that ... (ii) the

assets were transferred exclusively for a purpose other than to qualify for medical assistance...." 42 U.S.C. § 1396p(c)(2)(C). Godown contends that he is entitled to MA pursuant to the exception in § 1396p(c)(2)(C) because he demonstrated that the transfer of the property was not connected to his application for MA as he transferred the property when he was still able to travel around his home and property, tend to items in the greenhouse and was not in need of institutional medical care. While we sympathize with Godown's predicament, we are unpersuaded by his arguments.

■ Here, at the time the Godowns transferred the property to their children, both Mr. and Mrs. Godown suffered from ailments that could eventually render them in need of institutionalized care. In addition, the transfer of the property left Mr. Godown virtually penniless,[5] without any obvious means of paying for nursing home care if needed. The only explanation offered for transferring the property to the children without receiving any consideration in return was the desire to keep the property in the family. In light of the Godown's circumstances, it was reasonable for the hearing officer to interpret this explanation to mean precisely that the assets were transferred so that they would not be eroded by medical expenses. Because MA would instead provide for the medical care, the property could remain in the family. Far from rebutting the pre-

3. *See also Dempsey; Pyle; Ptashkin.*

4. We interpret Godown's argument to be that the record lacks substantial evidence to support the conclusion that the property was transferred to the children in order to qualify for MA.

5. Godown's application for benefits stated that his bank accounts totaled less than $100.00 and that he received a monthly social security benefit in the amount of $535.00. The application also reflected that Mrs. Go-

down owned an insurance policy with a face value of $13,000 and a cash value of $3,000. During the hearing, Mrs. Godown testified that in 1999, she had the option under her pension to take an immediate cash payment of approximately $118,000, which would also entitle her to a monthly payment of $671.91 when she turned 65 years old. She explained the she declined this option because if she exercised it, she would lose approximately $70,000.

sumption, this explanation confirms it. Even if Mrs. Godown's testimony were construed otherwise, the hearing officer, as the fact-finder, is charged with the responsibility of resolving conflicts in testimony and may reject the testimony of any witness. *Steinberg v. Department of Pub. Welfare*, 758 A.2d 734, 737 (Pa.Cmwlth. 2000). Therefore, we conclude that substantial evidence of record supports the Department's conclusion that Godown gave the property to his children in order to qualify for MA.[6]

Based upon the foregoing, the Department's order is affirmed.

**6.** We also reject any implicit argument that the Department misapplied the federal law, particularly 42 U.S.C. § 1396p. The Department's regulation at 55 Pa.Code § 178.104(e)(3)(ii) mirrors the federal statute. The Department did not misapply the exception set forth in subsection (e)(3)(ii); rather, it rejected Godown's explanation for the transfer, concluding that Godown failed to demonstrate that the transfer was made exclusively for a purpose other than to qualify for MA.

*ORDER*

AND NOW, this 30th day of December, 2002, the order of the Department of Public Welfare in the above captioned matter is hereby AFFIRMED.