**COLONIAL PARK CARE CENTER, LLC, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 20, 2015.
Decided July 21, 2015.
Publication Ordered Sept. 17, 2015.

Jonathan M. Crist, Harrisburg, for petitioner.

Addie A. Abelson, Assistant Counsel, Harrisburg, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge BONNIE BRIGANCE LEADBETTER.

Colonial Park Care Center, LLC (Colonial Park), petitions for review of two orders of the Chief Administrative Law Judge (Chief ALJ) of the Bureau of Hearings and Appeals of the Department of

Public Welfare (DPW)[1] that affirmed two decisions of an ALJ in the above-captioned consolidated appeals. In the transfer penalty appeal, No. 1604 C.D. 2014, Colonial Park appeals from an order denying in part and sustaining in part the appeal of John Matjasic (the institutionalized spouse) from a determination that his wife (the community spouse) transferred assets for less than fair consideration and, therefore, rendered him ineligible for payment of medical assistance/long-term care (MA/LTC) services for a period of time. In the undue hardship waiver appeal, No. 1605 C.D. 2014, Colonial Park appeals from an order denying Matjasic's appeal from a determination that he failed to establish that he would incur an undue hardship due to the MA/LTC period of ineligibility. We affirm both orders.

### Transfer Penalty Appeal

In March 2012, Matjasic, married and then seventy-seven years old, was admitted to Colonial Park, a nursing facility in Dauphin County. August 26, 2014 Adjudication, Finding of Fact (F.F.) No. 2. His admission followed a 2007 stroke, after which he resided with his wife and daughter, and a 2012 seizure, after which his family could no longer care for him at home. In July 2013, Colonial Park submitted an application on Matjasic's behalf to DPW for purposes of determining his eligibility for MA/LTC services.[2] *Id.*, No. 3. Colonial Park requested that MA/LTC services be authorized effective November 1, 2012, thereby starting a five-year reverse look back period for the transfer of assets from that date until November 1,

2007.[3] *Id.*, Nos. 4 and 5. It is undisputed that the community spouse deposited $125,218.44 into her M & T Bank account on November 4, 2009, and that she issued eleven checks to the couple's children and grandchildren in the total amount of $118,000 between November 27, 2009 and February 12, 2010. *Id.*, Nos. 6, 8 and 9.

In July 2013, DPW issued a notice finding Matjasic eligible for MA effective November 1, 2012, but with a period of ineligibility for LTC benefits until March 4, 2014, due to a transfer of assets in the amount of $135,218.44 for less than fair market value (FMV). *Id.*, Nos. 15 and 16. Before the administrative hearing, the parties stipulated that "the community spouse received fair consideration for $10,000 of the $135,218.44." *Id.*, No. 19. Although DPW did not issue a corrected notice, the period of ineligibility was recalculated by dividing the amount of the transferred assets, $125,218.44, by the average daily private-pay rate in effect at the time of the application for MA/LTC, $276.40. *Id.* at p. 5.

In August 2014, the ALJ denied in part and sustained in part Colonial Park's August 2013 transfer penalty appeal. Specifically, he determined that the community spouse transferred assets in order to qualify for MA, rejecting arguments that Matjasic's institutionalization was unexpected and that the gifts to family members were made solely for estate-planning purposes. In addition, the ALJ concluded that DPW incorrectly determined the uncompensated value (UV) of transferred assets based on a deposit, rather than the

---

1. Subsequent to the filing of the above-captioned appeals, the DPW changed its name to the Department of Human Services. *See* Act of June 13, 1967, P.L. 31, *amended by* Act of September 24, 2014, P.L. 2458, 62 P.S. § 103 (effective November 24, 2014).

2. Colonial Park is the assignee of Matjasic's right to receive MA benefits. May 19, 2014 Hearing, Exhibit A–4, Certified Record (C.R.), Item No. 3 at 84; Reproduced Record (R.R.) at 1a.

3. 55 Pa.Code § 178.104a(a).

$118,000 actually transferred.[4] The Chief ALJ affirmed and Colonial Park's petition for review followed.

■ As we observed in *Godown v. Department of Public Welfare*, 813 A.2d 954, 956 (Pa.Cmwlth.2002), the Medicaid program provides federal financial assistance to states choosing to reimburse needy individuals for certain medical expenses.[5] Assistance may be provided, however, only to persons deemed to be "medically needy," such that they do not have the income and resources to meet necessary medical costs. In this regard, DPW is the payer of last resort under the Commonwealth's statutory scheme. 55 Pa.Code § 178.6(a). Accordingly, in order to participate in the MA program, the Commonwealth is required to impose a period of ineligibility for MA/LTC benefits on institutionalized individuals who transfer assets for less than FMV within a five-year look-back period. 55 Pa.Code § 178.104. There are, however, some exceptions to that ineligibility, which brings us to the applicants' respective burdens.

■ An applicant for MA bears the burden of establishing eligibility, including the burden to demonstrate that the transfer of assets during the look-back period was made for purposes other than to qualify for MA. 55 Pa.Code § 178.104(e)(3)(ii). When an applicant makes such a transfer,

DPW is entitled to a presumption that they were transferred in order to qualify for MA. 55 Pa.Code § 178.105. It is the burden of the applicant to rebut this presumption by showing a purpose for transferring assets other than to qualify for MA. 55 Pa.Code § 178.105(a). Further, "[i]f the establishment of MA eligibility is determined to be part of the reason for the transfer, even if another purpose has also been established, the asset was not transferred solely for some purpose other than to qualify for MA and the rebuttal is not successful." 55 Pa.Code § 178.105(d). Convincing evidence for rebuttal includes proof of the circumstances surrounding the transfer, such as the transfer's purpose, plans for self-support after the transfer and the applicant's relationship to the person or persons to whom the asset was transferred. 55 Pa.Code § 178.105(c)(1), (4) and (5). If the applicant fails to rebut the presumption, then he will be disqualified from receiving MA for a period equal to the number of months of average nursing home care that the transferred assets could have purchased. 55 Pa.Code § 178.104(d).

■ For three reasons, Colonial Park argues that the Chief ALJ erred in determining that the applicant failed to establish that the community spouse transferred assets for purposes other than to qualify for MA:[6] 1) her transfers were made pur-

---

**4.** UV is defined as follows:

> The amount remaining after the FMV of a property at the time of transfer is reduced by the following amounts in the order listed:
> (i) The cost of sale/transfer and encumbrances.
> (ii) The amount of compensation received.

55 Pa.Code § 178.2.

**5.** Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396r.

**6.** Although Colonial Park makes much of the couple's past periods of separation, they never divorced. In pertinent part, 55 Pa.Code § 178.104(b) provides: "A transfer of assets by the community spouse to a person other than the institutionalized spouse is treated and affects the eligibility of the institutionalized spouse the same as a transfer by the institutionalized spouse." In that regard, we held as follows in another estranged-couple case:

> In determining eligibility for LTC benefits, the combined resources of a married couple must be considered. 42 U.S.C.

suant to an estate plan, which predated the institutionalized spouse's admission to Colonial Park by more than two years; 2) the community spouse and her daughter did all that they could to prevent Matjasic's entry into a nursing facility; and 3) Matjasic's seizure was an unanticipated medical event. Colonial Park's position is without merit.

As we concluded in *Godown*, 813 A.2d at 957–58: "Far from rebutting the presumption, [the] explanation [given for the transfer of assets] confirms it." In that regard, the characterization of the transfer as "estate planning" in the present case is incongruous given Matjasic's age and the ongoing deterioration of his health over a number of years. The undisputed evidence reflects that, after his 2007 stroke, he had to move into his daughter's home, required constant care, was unable to ambulate without assistance, used a wheelchair and needed assistance with transfers. In 2009, the family hired home health aides and Matjasic was hospitalized at least twice while residing in his daughter's home. In that regard, although the timing of the January 2012 seizure may have been unexpected, the evidence reflects that his health had been fragile for a number of years. As the Chief ALJ determined, while it is admirable that his family's care enabled Matjasic to avoid in-

stitutionalization for almost five years, his subsequent need for LTC was far from unforeseeable. August 26, 2014 Adjudication at 24. Our analysis in *Godown* is instructive.

At the time the Godowns transferred property to their children, both of the parents were suffering from health problems that could eventually render them in need of institutionalized care. In addition, the transfer of property rendered Mr. Godown virtually penniless and the only explanation given for the transfer was to keep the property in the family. We determined that, "it was reasonable for the hearing officer to interpret this explanation to mean precisely that the assets were transferred so that they would not be eroded by medical expenses." 813 A.2d at 957.

 . Similarly in the present case, the result of the so-called estate planning was to render a consistently ailing and elderly Matjasic without any obvious means of paying for nursing home care. The evidence also reflects that, no longer able to live alone, the community spouse moved in with the daughter in 2006. August 26, 2014 Adjudication at 6. In rejecting the daughter's explanation that "the gifts were timed to take advantage of tax consequences per an accountant's advice[,]" the Chief ALJ reasoned as follows: "This is as

---

§ 1396r–5(h)(1); 55 Pa.Code § 178.123(d). While the annuity was purchased using funds from an inheritance received by [the community spouse], all of the couple's resources must be counted "regardless of any State laws relating to community property or the division of marital property." 42 U.S.C. § 1396r–5(c)(2). [DPW's] regulations provide that the "spousal share determination is based on the total countable verified resources owned by the couple when the spouse was institutionalized...." 55 Pa.Code § 178.123(b).

. . . .

Because [the couple was] not divorced, the status of the distribution of their marital

property was not relevant to the determination of what resources were available to [the institutionalized spouse] in determining his eligibility for LTC benefits.

. . . .

[F]ederal law requires that the [DPW] count the combined resources of the [couple] regardless of whether those resources were actually made available to [the institutionalized spouse] to determine his LTC eligibility. [55 Pa.Code § 178.91(a).]

*Lancashire Hall Nursing & Rehab. Ctr. v. Dep't of Pub. Welfare*, 995 A.2d 540, 543–45 (Pa.Cmwlth.2010) (footnote omitted).

much evidence of strategic gifting as estate planning." August 26, 2014 Adjudication at 23. Although few, if any, families wish to have their hard-earned assets put toward nursing home care, the bottom line is that the law requires DPW and, consequently, taxpayers, to be the payer of last resort. *Novitsky v. Dep't of Pub. Welfare*, 42 A.3d 1165, 1168–69 (Pa.Cmwlth.2012); *Ptashkin v. Dep't of Pub. Welfare*, 731 A.2d 238, 241 (Pa.Cmwlth.1999). We conclude, therefore, that the substantial evidence of record supports DPW's conclusion that the transfer of assets was made in order to qualify for MA. Accordingly, we affirm the order denying Colonial Park's transfer penalty appeal. We turn now to its undue hardship waiver appeal.

### Undue Hardship Waiver Appeal

■ In January 2013, Colonial Park filed an application for an undue hardship waiver of the penalty transfers seeking to vacate the period of ineligibility. The sole ground for its application was the alleged unexpected nature of Matjasic's seizure post transfer that led to his institutionalization.[7] In April 2014, DPW denied the application and Colonial Park appealed. At the applicant's request, the ALJ considered the testimony of Matjasic's daughter from the transfer penalty hearing. The ALJ denied Colonial Park's appeal, the Chief ALJ affirmed and Colonial Park's petition for review followed.

DPW's statement of policy provides:

[U]ndue hardship exists when the application of the transfer of assets penalty provision would deprive the individual of one of the following:

(1) Medical care so that the individual's health or life would be endangered.

(2) Food, clothing, shelter or other necessities of life.

55 Pa.Code § 178.104b(a)(1) and (2). Reciting the above two factors, the definition of the term also provides that undue hardship exists when the denial of MA would deprive a financially dependent family member of the necessities of life. 55 Pa. Code § 178.2.

On appeal, Colonial Park asserts that the Chief ALJ erred in interpreting the undue hardship regulations to require that a resident demonstrate physical deprivation of medical care or necessities of life when no one admitted to a skilled nursing facility could ever qualify for a waiver on that basis. In support, it cites the Department of Health's regulation providing that a facility may not discharge a nursing home resident involuntarily, even for nonpayment, unless he or she is transferred to a place that can continue to meet his or her current medical care and other needs. 28 Pa.Code § 201.29(g). To that end, Colonial Park maintains that the Chief ALJ's literal interpretation of the undue hardship language as requiring physical hardship renders the waiver meaningless and deprives Matjasic of due process.

In addition, Colonial Park references DPW's Form 1854, entitled "Explanation of the Effect of Transfers of Assets on Eligibility for Payment of Long Term Care Services," in support of its argument that DPW can review more than the deprivation of medical care or necessities of life when determining whether an undue hardship waiver should be authorized. Specifi-

---

7. In its brief, Colonial Park alludes to the community spouse's homecare of Matjasic for almost five years as an additional basis for an undue hardship waiver. In its application, however, Colonial Park relied solely on the unexpected nature of Matjasic's seizure as grounds for its request. May 19, 2014 Hearing, Application for Undue Hardship Waiver, Exhibit A–1, C.R., Item No. 3 at 50; R.R. at 90a. We conclude, therefore, that Colonial Park waived consideration of any additional grounds on appeal.

cally referencing the form's section on how to establish grounds for an undue hardship waiver, Colonial Park notes that, in addition to those two factors, the form also lists: a) the sudden onset of serious illness or disability, post transfer; or b) an unexpected loss of other resources or income, post transfer, that made the applicant ineligible for MA/LTC. May 19, 2014 Hearing, Form 1854, Exhibit A–5, C.R., Item No. 3 at 141; R.R. at 122a. Colonial Park's position is without merit.

██ The fact that regulations from the Department of Health, for example, may expand the factors to be considered regarding undue hardship in cases involving institutionalized applicants does not render the requirement meaningless. In order to establish undue hardship, there must be serious physical deprivations of medical care or necessities of life *or* serious events of a sudden and/or unexpected nature. Otherwise, any hardship could constitute an *undue* hardship. That leads us to Colonial Park's allegations regarding the existence of additional factors to be considered in determining undue hardship.

██ In assessing undue hardship, the Chief ALJ considered Colonial Park's stated ground for the application: the alleged unexpected nature of Matjasic's seizure after the transfer.[8] Contrary to its suggestion, however, this is not a new factor. Instead, it is one of two factors listed in 55 Pa.Code § 178.105(d)(1) for rebutting the presumption of ineligibility after a transfer of assets for less than FMV by proving that the transfer was made for purposes other than to qualify for MA.[9] As was the case in the transfer penalty appeal, the applicant in the undue hardship waiver appeal must offer evidence pertinent to the circumstances surrounding the transfer of assets during the look-back period. This is why the language in Form 1854, describing how to establish the existence of an undue hardship waiver,[10] is consistent with the language in the regulation describing how to rebut the presumption of ineligibility due to transfer for less than FMV.[11] Presumably, this is also why Colonial Park requested that the testimony of Matjasic's daughter from the transfer penalty appeal be used in the undue hardship waiver appeal. Accordingly, notwithstanding the

8. In its reply brief, Colonial Park maintains that the Chief ALJ failed to consider the unexpected nature of Matjasic's seizure as a basis for undue hardship. This is simply incorrect. From the adjudication, it is clear that the Chief ALJ acknowledged that factor as the basis for Colonial Park's application and provided analysis in support of his rejection of that factor. August 26, 2014 Adjudication at 11–12.

9. The second factor is the unexpected loss of assets after the transfer, which is also listed in Form 1854 but not at issue here. Under that provision, an applicant transfers assets for less than FMV, pursuant to his belief that his remaining assets will cover nursing home care, but subsequently experiences an unexpected loss of income after the transfer.

10. Form 1854, in relevant part, states:
All of the circumstances surrounding the transfer will be evaluated as well as factors such as age, health, and financial situation at the time the transfer was made, the value of the transferred asset, the amount of compensation received, the date the asset was transferred, any pattern of gifting, the relationship of the transferee to the transferor, reason(s) why the asset(s) cannot be returned to the transferor. . . .
May 19, 2014 Hearing, Form 1854, Exhibit A–5, C.R., Item No. 3 at 141; R.R. at 122a.

11. In order to establish that the asset in question was transferred solely for some purpose other than to qualify for MA, proof of the following is required: 1) purpose of transfer; 2) attempts to dispose of asset at its FMV; 3) reason for accepting less than FMV; 4) plan for self-support post-transfer; and 5) transferor's relationship to transferee. 55 Pa.Code § 178.105(c)(1)(5).

fact that there may be some flexibility in undue hardship determinations, the form itself does not create new factors.

In conclusion, the Chief ALJ rejected the stated ground for Colonial Park's application and determined that, given the circumstances of Matjasic's poor health over a long period of time, the seizure and, consequently, his need for LTC, was not unexpected. The Chief ALJ concluded, therefore, that there was no evidence that Matjasic suffered any undue hardship.

Accordingly, we affirm both orders.

### ORDER

AND NOW, this 21st day of July, 2015, the orders of the Department of Public Welfare in the above-captioned consolidated appeals are hereby AFFIRMED.