**PENNSYLVANIA STATE TROOPERS ASSOCIATION and Thomas R. Scales, Petitioners**

**v.**

**PENNSYLVANIA STATE POLICE, LOST AND DAMAGED PROPERTY BOARD OF APPEAL, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 2006.
Decided April 27, 2006.

Sean T. Welby, Harrisburg, for petitioners.

Thomas F. Jakubiak, Asst. Counsel and Barbara L. Christie, Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania State Troopers Association and Thomas R. Scales (Scales) petition for review of an adjudication of the Lost and Damaged Property Board of Appeal (Board) of the Pennsylvania State Police, holding that funds were properly withheld from Scales' final salary payment to cover damages to a State Police vehicle resulting from an accident in which Scales was the driver.[1] Because Scales was

---

1. The Board also authorized Scales to acquire ownership of the damaged vehicle for salvage

speeding and under the influence of alcohol when the accident occurred, the Board concluded that he should be held financially responsible for the loss. Finding no error in the Board's determination, we affirm.

The background to this case is as follows. Scales, who was Acting Station Commander for Troop R, in Honesdale, Pennsylvania, was assigned the use of an unmarked Ford sedan owned by the State Police. On December 2, 1999, while off duty, Scales was involved in a single-car accident that caused extensive damage to the vehicle. When state troopers arrived at the scene, they noticed that Scales smelled of alcohol, his eyes were red and glassy and his speech was slurred. They placed him under arrest for driving under the influence of alcohol.

Shortly after the accident, the Bureau of Professional Responsibility (Bureau) assigned Internal Affairs Division–East[2] to investigate and determine whether Scales should be held liable for the damages to Commonwealth property that resulted from the accident. Under the State Police employment policy, set forth in Field Regulation FR 4–1.03(A)(2), employees may be required to pay for damages to, or loss of, Commonwealth property.[3] Generally, employees are not responsible for damage to vehicles, unless an internal investigation determines otherwise.[4] The internal investigation is followed by a final determination at the request of the employee.

Prior to the accident, Scales had made known his intention to retire from the State Police on January 7, 2000. When the paperwork on that retirement was received, Lieutenant Colonel Thomas Coury, then Deputy Commissioner of Administration, instructed the payroll department to delay payout of Scales' accumulated sick and annual leave. In addition, Coury reviewed the accident report and determined that Scales should be held responsible for damages in the amount of $19,381.32, i.e., $18,800 for damages to the vehicle and $581.32 for damage to property of the Department of Transportation. On April 6, 2000, Coury notified Scales that the Bureau of Professional Responsibility recommended that Scales pay for the vehicle he destroyed because police reports showed that Scales had been driving the vehicle under the influence of alcohol, at a high rate of speed and was responsible for the accident. As a result of this recommendation, Scales was advised that funds for this reimbursement were being withheld from Scales' final paycheck. On May

---

value. It also ordered the return of $581.32 withheld from Scales' final leave payout for damages to property of the Department of Transportation. Scales does not challenge that portion of the decision here.

**2.** The first trooper on the scene, Trooper Steven Kozloski, prepared a separate accident report, which was made part of the IAD Investigative Report. Reproduced Record at 72a–73a (R.R.——).

**3.** FR 4–1.03(A)(2) provides, "Loss of or damage to issued or provided property and equipment may require reimbursement of replacement or repair cost to the [Commonwealth]." R.R. 492a.

**4.** FR 4–1.04, Exclusions and Exceptions, provides

Damage to [State Police] vehicles, sustained as a result of motor vehicle accidents ... are generally excluded from the provisions of this regulation. However, in such cases, if the situation warrants an investigation under AR 4–25, Internal Investigations, separate from the accident investigation, any finding in the internal administrative investigation that personnel should be required to reimburse the Commonwealth for the cost of damage or repair shall enact the provisions of this regulation for an eventual final determination regarding reimbursement.
R.R. 494a.

12, 2000, Scales filed a grievance under the collective bargaining agreement.

On July 7, 2000, Corporal Casey M. McCormick, on behalf of Internal Affairs Division East, issued a five-page report detailing the incident of December 2, 1999. The report noted that while operating the State Police vehicle, Scales left the roadway, striking a concrete culvert and causing extensive damage to the vehicle. Scales refused to submit to a blood test, but he was arrested for DUI because he appeared obviously intoxicated and admitted to drinking before the accident. Scales' claims of mechanical difficulties were not confirmed in post-accident tests conducted by the State Police. The report made no recommendation with respect to Scales' responsibility to pay for the damages.

Thereafter, on July 20, 2000, Captain Joseph R. Marut of Troop R, Dunmore station, issued another internal investigation report supplementing McCormick's report. Marut's report found that Scales' negligence caused the accident and stated if Scales had not retired on January 7, 2000, he would have been disciplined. However, Marut concluded that "[d]ue to the fact that retired Sgt. Scales has left the Department, I consider this matter closed." R.R. 290a. On July 21, 2000, Major Francis E. Koscelnak, the Area II Commander, reviewed Marut's investigation report, agreed with its conclusion and recommended that the investigation be closed. These reports effectively ratified

Coury's decision to withhold funds from Scales' final pay by recommending that the matter be closed.

On September 25, 2000, Coury, in his new position as Deputy Commissioner of Operations, filed another investigation report following up on Marut's report. He agreed with Marut's determination that Scales' misconduct was serious and stated, "If Sergeant Scales had not retired prior to this determination he would have most certainly been subjected to severe Department discipline." R.R. 287a. He concluded that "it is my determination that Sergeant Scales should be held financially liable for the loss suffered by the Commonwealth in the amount of $19,381.32." *Id.*

On June 26, 2001, the arbitrator denied Scales' grievance and transferred the matter to the Board. Thereafter, on August 1, 2001, Scales requested a hearing from the Board.[5] The Board did not conduct an evidentiary hearing; rather, the Board convened on August 6, 2001, reviewed investigative reports and concluded that Scales would not be reimbursed the $19,381.32 that had been withheld from his final salary payment. Scales appealed that decision to this Court, which, by order dated May 31, 2002, vacated the Board's decision and remanded the case for a formal evidentiary proceeding that complied with the procedural requirements for Commonwealth agency adjudications set forth in the Administrative Agency Law.[6] *See Pennsylvania State Troopers Association*

---

5. FR 4–1.06 provides that a request for an administrative review shall be submitted to the employee's Troop Commander or Bureau Director, who shall have the option of proceeding with an informal hearing or an evaluation of written documentation only. The reviewer then forwards a written report to the Deputy Commissioner of Staff, who makes a determination of negligence or non-negligence and, if appropriate, assigns the cost to

repair or replace the property to the employee.

6. 2 Pa.C.S. §§ 501–508, 701–704. Section 504 of the Law provides, "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa.C.S. § 504.

*v. Pennsylvania State Police*, 800 A.2d 995 (Pa.Cmwlth.2002).

On March 23, 2005, approximately three years after this Court issued its remand order, the Board conducted the remand hearing. At this hearing, no evidence concerning the damage to the property of the Department of Transportation was presented; however, the State Police presented both witnesses and exhibits to attest to the amount of damage caused to the State Police vehicle and to Scales' negligence. Based on this evidence, the Board held that (1) Scales was entitled to a return of $581.32 withheld for the alleged damages to the property of the Department of Transportation; (2) Scales was not entitled to a return of the $18,800 withheld for damages to the State Police Vehicle; and (3) Scales was entitled to ownership of the damaged vehicle. Scales now petitions this Court for review.[7]

Scales presents three issues for our consideration, which have been reordered for our analysis. He argues, first, that the Board erred because the State Police violated FR 4–1.04 by withholding funds from his final salary payment prior to completion of an internal investigation concluding that Scales should be held financially responsible for damages to Commonwealth property. Second, Scales argues that the Board's decision effected an illegal garnishment of Scales' wages. Third, Scales argues that the Board's three-year delay in holding a hearing directed by this Court upon remand violated due process.

■ We consider, first Scales' claim that the State Police violated its own employment policy, set forth in FR 4–1.04, by withholding funds from his final salary payment before completing its investiga-

tion. As noted, it is the general rule of the State Police not to hold employees liable for damage to Commonwealth vehicles. However, FR 4–1.04 provides an exception for the situation when an internal investigation includes a finding that an employee should be held responsible for the loss. In relevant part, the policy states that

> if the situation warrants an [internal] investigation . . . , separate from the accident investigation, *any finding in the internal administrative investigation that personnel should be required to reimburse* the Commonwealth for the cost of damage or repair *shall enact the provisions of this regulation for an eventual final determination* regarding reimbursement.

F.R. 4–1.04 (emphasis added); R.R. 494a. Stated otherwise, a finding in an internal investigation that the employee should pay for a loss entitles the employee to a "final determination" on the finding of liability. Scales reads this provision to mean that the State Police cannot withhold sick and annual leave payouts unless and until the internal investigation has gone to the "final determination." We disagree.

FR 4–1.04 does not say what Scales would like it to say. It does not impose any requirement upon the State Police to complete the internal investigation before taking steps to protect its ability to collect reimbursement for damage to Commonwealth property. It says nothing with respect to how or when the reimbursement liability will be imposed or collected. In this case, the internal investigative reports determined the matter "closed" by ratifying Coury's recommendation of April 6,

---

7. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of Administrative Agency Law, 2 Pa.C.S. § 704.

2000. Unfortunately for Scales, the internal investigation did not exonerate him but, rather, found that he was responsible for the destruction of the vehicle and, therefore, he could not expect a return of the funds withheld from his final paycheck. FR 4–1.04 did not forbid the State Police from withholding funds from Scales' final payout as security for his obligation to pay for the destroyed police vehicle while it completed its internal investigation.[8]

■ Next, Scales argues that the Board effected an illegal garnishment of his wages by allowing the State Police to withhold $18,000 from his salary while it investigated the circumstances of the accident. The State Police counters that withholding was not a garnishment because it did not involve a third party creditor of Scales. We agree with the State Police.

■ Garnishment is a "proceeding through which a creditor collects his debt out of property of the debtor in the hands of a third party, ... and may be used to determine whether the garnishee owes a debt to the judgment debtor, or has property of the judgment debtor." *Garden State Standardbred Sales Co., Inc. v. Seese*, 417 Pa.Super. 15, 611 A.2d 1239, 1241 (1992) (citations omitted). As has been explained,

> Garnishment is a remedy created to enable a *judgment creditor to reach assets of his or her debtor held by a stranger* and is a means by which the creditor collects his or her debt out of property

of the debtor in the hands of a third party.

STANDARD PENNSYLVANIA PRACTICE 2d § 77:1 (emphasis added). The State Police was not a "stranger" to Scales' debt but, rather, a direct and interested party. This is not a garnishment.

Under its employment policy set forth in FR 4–1.04, the State Police was authorized to be reimbursed for the losses caused by Scales, and it is commonplace for employers to hold employees responsible for loss or damage to company equipment. *See Apple v. Unemployment Compensation Board of Review*, 126 Pa.Cmwlth. 195, 559 A.2d 87 (1989) (concluding that employee's unemployment benefits could be modified to account for employer's financial loss when employee negligently lost company equipment because of its policy requiring employees to reimburse employer for loss or damage to company equipment). Scales would have us read FR 4–1.04 as forbidding the State Police from doing what is routine, *i.e.*, deducting amounts owed to an employer from the employee's salary. FR 4–1.04 simply does not dictate the result suggested by Scales.

■ In his final issue, Scales contends that his due process rights were violated by the Board's unjustified delay in conducting a hearing on Scales' request for a final determination. One seeking to establish that his or her due process rights have been violated as a result of an unjustified delay in a post-deprivation proceeding has the burden of establishing that some harm or prejudice to his or her interests has

---

8. Scales argues that the State Police must follow its own regulation. We agree with this premise but disagree that FR 4–1.04 even speaks to the question of withholding funds as security while the investigation is conducted.

The dissent argues that FR 4–1.08(B) establishes that the investigation must be completed before an officer makes his reimbursement payment. First, this rule directs the *last* day payment can be made; it does not forbid an earlier payment. Second, the rule directs the conduct of the officer, not the State Police. Third, FR 4–1.08(B) does not address withholds from a final paycheck, which is the case here. FR 4–1.08(C) addresses this situation, and it specifically authorizes the State Police to adjust a final salary check to account for reimbursement that is owed.

been caused by the delay. *Ullo v. State Board of Nurse Examiners,* 41 Pa. Cmwlth. 204, 398 A.2d 764, 766 (1979). Scales did not meet this burden.

█ Scales argues that the hearing delay resulted in certain gaps in the memories of the witnesses and, thus, he was prejudiced. Our review of the testimony at the March 23, 2005, hearing does not support this claim. It is true that certain witnesses could not recall minor details about the accident, but those lapses did not affect the outcome of the case. The officers at the scene of the accident were very certain in their testimony about Scales' drunkenness; certain in their conclusion that Scales' negligence was the cause of the damage to the vehicle; and certain that Scales was not authorized to use the vehicle for personal trips as he was doing on the night of the accident. Simply put, had the witnesses recalled every minor detail of the accident, the outcome would not change. The Board is owed no praise for acting upon this Court's remand in such a dilatory manner; however, it was not in itself in error. Scales has not established that he was prejudiced by the delay in the remand hearing or that the outcome would have been different three years earlier.

Accordingly, the decision of the Board is affirmed.

**ORDER**

AND NOW, this 27th day of April, 2006, the order of the Pennsylvania State Police, Lost and Damaged Property Board of Appeal, dated May 25, 2005, in the above-captioned matter is hereby affirmed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that, on April 6, 2000, pursuant to

Field Regulation (FR) 4–1.04, the Pennsylvania State Police (PSP) properly withheld $18,800 from Thomas R. Scales (Scales) as reimbursement for damages to a state-owned vehicle. In so holding, the majority concludes that FR 4–1.04 allows the PSP to withhold Scales' money *prior to* the completion of an internal investigation and a final determination by the Lost and Damaged Property Board of Appeal (Board). (Majority op. at 48.) I cannot agree.

FR 4–1.03(2) states that "damage to issued or provided property and equipment may require reimbursement of replacement or repair cost...." (R.R. at 460a.) FR 4–1.04 provides, in pertinent part, as follows:

> Damage to Department vehicles, sustained as a result of motor vehicle accidents ... are generally excluded from the provisions of this regulation. However, in such cases, if the situation warrants an [internal] investigation ... *separate from the accident investigation,* any *finding in the internal administrative investigation* that personnel should be required to reimburse the Commonwealth for the cost of damage or repair *shall enact the provisions of this regulation for an eventual final determination regarding reimbursement.*

(R.R. at 462a) (emphasis added). The words of FR 4–1.04 are clear and unambiguous. When there is an accident involving a state-owned vehicle, the PSP will perform an accident investigation. Then, *if warranted,* there will be a separate internal investigation. *If* the internal investigation results in a *finding* that the trooper should be required to reimburse the Commonwealth for damages to the vehicle, that finding *shall trigger* FR 4–1 *for an eventual final determination regarding reimbursement.* (R.R. at 462a.)

Here, as the majority indicates, Lieutenant Colonel Thomas Coury reviewed the *accident report* and, *on that basis alone,* determined in April 2000 that Scales should be held responsible for damages to the state-owned vehicle, directing that $18,800 be withheld from Scales' final paycheck. (Majority op. at 45.) Thus, unlike the majority, I submit that Coury's action was contrary to FR 4–1.04.

Moreover, the initial internal investigation report, filed on July 7, 2000, by Corporal Casey M. McCormick, contained *no finding* that Scales should reimburse the Commonwealth for damages to the vehicle. (R.R. at 291a.) An internal investigation report filed on July 20, 2000, by Captain Joseph T. Marut, stated, "I consider this matter closed. . . ." (R.R. at 290a, 424a.) The next day, Captain Francis E. Koscelnak recommended that the matter be closed. (R.R. at 289a.) Thus, even after the internal investigation was complete, there was no finding to justify the withholding of Scales' money.[1]

The majority states that these three internal investigation "reports effectively ratified Coury's decision to withhold funds from Scales' final pay by recommending that the matter be closed." (Majority op. at 46.) I cannot agree. First, the reports do not mention Coury's decision to withhold funds from Scales; thus, one could reasonably infer that the investigators were not even aware of Coury's decision. Second, the Board did not make a finding that the investigators were aware of Coury's decision and ratified it; to the

extent that the majority has made its own finding in that regard, the majority has exceeded this court's scope of review. *See* section 704 of the Administrative Agency Law, 42 Pa.C.S. § 704. Third, FR 4–1.04 *required* an internal investigation *finding* that Scales reimburse the Commonwealth, and the internal investigation reports do *not* contain such a finding. Fourth, even if the internal investigation reports did ratify Coury's April decision to withhold Scales' funds, then, at best, the reports ratified an *invalid* decision. Therefore, I still would conclude that the PSP violated FR 4–1.04 by withholding funds from Scales.

In concluding otherwise, the majority states that FR 4–1.04 "says nothing with respect to how or when the reimbursement liability will be imposed or collected." (Majority op. at 47.) However, FR 4–1.08(B) does set forth how and when a required reimbursement is to be paid. That provision states:

> B. *Required Reimbursement:* Payment shall be remitted to the individual's Troop Commander/Bureau Director *within 45 days of the date of determination by the Deputy Commissioner of Staff or Board of Appeal.*
> NOTE: For payments in excess of $100.00, a grace period and payment plan may be arranged through the Director, Bureau of Staff Services upon approval of the Deputy Commissioner of Staff.

(R.R. at 465a) (emphasis added). FR 4–1.08 clearly and unambiguously states that payment is not due until forty-five (45) days after the date of determination of the Board. Here, the date of determination was May 25, 2005; thus, if there had been a valid internal investigation finding in this

1. I realize that, on September 25, 2000, Coury reviewed the internal investigation reports and decided that Scales should reimburse the Commonwealth; however, at that time, Coury no longer had authority over internal investigations. (R.R. at 58a–59a, 287a, 425a.) Thus, Coury's decision was not a valid internal investigation finding.

case, payment would have been due on July 9, 2005, *not April 6, 2000.*[2]

Based on the foregoing, I would reverse.

Judge SMITH–RIBNER joins in this dissent.

**2.** The majority points out that, under FR 4–1.08(C), the State Police may adjust a final salary check "for reimbursement that is owed." (Majority op. at 48 n. 8.) However, as indicated by FR 4–1.08(B), reimbursement is not "owed" until forty-five days after the determination of the Board of Appeal.