**Maryjo GILROY, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2008.

Decided April 9, 2008.

Thomas J. MacNeely, Wilkes–Barre, for petitioner.

Sarah E. Wolfe, Asst. Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Maryjo Gilroy (Gilroy) petitions for review of the June 12, 2007, order of the Department of Public Welfare (DPW) upholding the October 25, 2006, decision of

the Bureau of Hearings and Appeals (BHA), which affirmed the decision of an Administrative Law Judge (ALJ) finding that Gilroy received an overpayment of Medical Assistance (MA) benefits. We vacate and remand.

On November 4, 2004, Gilroy, through her son and Power of Attorney, Henry Popson (Popson), filed an application with the local county assistance office (CAO), seeking MA benefits for nursing facility care (NFC). On December 3, 2004, the CAO determined that Gilroy was eligible for benefits retroactively to November 1, 2004. (Findings of Fact, Nos. 1–2.)

During a subsequent investigation of Gilroy's finances, the Office of Inspector General (OIG) discovered that Gilroy's husband, Philip Gilroy (Decedent), passed away on September 18, 2004, and that Gilroy received $5,000 from Decedent's pension on October 5, 2004. Further, on November 12, 2004, Decedent's daughter from a previous marriage filed a Petition for Citation to show cause why Gilroy should not be permitted to disclaim her one third elective share of Decedent's $60,000 estate. On November 18, 2004, the Court of Common Pleas of Luzerne County awarded a citation to Gilroy, allowing her to disclaim her $20,000 elective share of Decedent's estate. In November 2004, Gilroy gave the $5,000 pension check and a $2,500 insurance policy check to Decedent's family without consideration. (Findings of Fact, Nos. 3–11.)

Accordingly, OIG concluded that Gilroy had transferred resources totaling $27,500 to Decedent's family for less than fair consideration during the look-back period, which resulted in an ineligibility period of four months and an overpayment of MA benefits in the amount of $13,881.82. 55 Pa.Code § 178.104.[1] Thereafter, OIG issued a Notice of Overpayment to Gilroy, informing her of the overpayment and requesting that she remit that amount to the Commonwealth. (Findings of Fact, Nos. 14–15.) Gilroy filed an appeal from OIG's determination, and the matter was assigned to an ALJ for hearings.

Testifying on behalf of OIG, Ruth Gola, a Claims Investigation Agent, reported on the facts uncovered in OIG's investigation, and Catherine Yefko, an Income Maintenance Caseworker Supervisor, explained how OIG calculated the four-month penalty period.[2]

Popson, who represented Gilroy, agreed with the facts as averred by OIG but argued that the overpayment should be "waived" due to extraordinary circumstances. In that regard, Popson testified that Gilroy and Decedent met in February of 2003, married in October of 2003 and lived together until July of 2004, when Gilroy suffered a massive stroke and went into a rehabilitation center. On September 18, 2004, shortly before Gilroy was transferred to a nursing home, Decedent committed suicide. Popson testified that Gilroy's transfer of Decedent's assets was not an attempt to deceive; he explained

**1.** The regulation at 55 Pa.Code § 178.104 provides, in relevant part, that if assets are disposed for less than fair market value on or after the look-back date (a period of thirty-six months from the date an applicant is both institutionalized and has applied for MA benefits) the individual will be ineligible for NFC for a period of time calculated based on the amount of assets transferred and the cost of private payment for NFC.

**2.** Gilroy's four month ineligibility or overpayment period was determined by taking the amount transferred for less than fair consideration, $27,500, and dividing it by the cost of private patient care, $5,787.38 per month (27,500/5,787.38 = 4.75). (Findings of Fact, Nos. 12–13.) See 55 Pa.Code § 178.104(d).

that because the relationship between Gilroy and Decedent was so short, Gilroy's family believed it only fair that Gilroy not benefit financially from Decedent's death, but, instead, should give Decedent's assets, i.e., Gilroy's elective share in Decedent's estate, Decedent's insurance proceeds and Decedent's pension, to Decedent's two adult daughters from his previous marriage, one of whom had been living with Decedent at the time of his death. (R.R. at 76a–79a.)

After considering the evidence, the ALJ upheld the OIG's determination, relying on *Perna ex rel. Bekus v. Department of Public Welfare,* 807 A.2d 310 (Pa.Cmwlth. 2002), in which we held that a spouse is required to elect against a deceased spouse's will and that the failure to take the election can jeopardize an entitlement to ongoing MA benefits. We based our holding in *Perna* on 55 Pa.Code § 178.1(g), which requires that an MA applicant or recipient take reasonable steps to obtain and make available resources to which she is or may be entitled unless she can show good cause for not doing so. The ALJ rejected Popson's argument that Gilroy was entitled to an exception, stating that no such exception is available under DPW's regulations. Gilroy appealed the ALJ's decision to the BHA, which affirmed. Gilroy then appealed to DPW, which also upheld the ALJ's decision. Gilroy now appeals to this court.[3]

■ Gilroy argues that her transfer of $27,500 to Decedent's daughters did not render her ineligible for MA benefits for four months and, thus, she received no overpayment.[4] Gilroy acknowledges that, under DPW's regulations, there is a presumption that an applicant who disposes of resources for less than fair consideration during the look-back period has done so for the purpose of qualifying for MA benefits. However, Gilroy maintains that this is a rebuttable presumption, and the ALJ erred when he refused to consider her attempts at rebuttal; specifically, Popson's uncontradicted testimony that the sole purpose behind Gilroy's transfer of $27,500 to Decedent's daughters was one *other* than to qualify for MA. We agree.

■ It is well settled that if an applicant disposes of assets for less than fair market value, i.e., without fair consideration, during the look-back period, DPW presumes that the transfer was made to qualify for assistance. 55 Pa.Code §§ 178.104 and 178.105. However, DPW's regulations also provide an applicant with an opportunity to rebut this presumption by establishing through convincing evidence that, *inter alia,* the assets were transferred exclusively for a purpose other than to qualify for assistance.[5] 55 Pa.Code §§ 178.104(e)(3) and 178.105; *Perna.* Convincing evidence includes documentary and non-documentary evidence that provides proof of the circumstances surrounding the transfer, including: (1) the purpose for transferring the asset; (2) the attempts to dispose of the asset at its fair market value; (3) the reason for accepting less than fair market

---

**3.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** In MA proceedings, the applicant bears the burden of proving his eligibility for MA bene-

fits. *Dempsey ex rel. Dempsey v. Department of Public Welfare,* 756 A.2d 90 (Pa.Cmwlth. 2000).

**5.** The applicant can rebut the presumption at various times during the application process, including at a prehearing conference, at a hearing or through a court order. 55 Pa. Code § 178.106(1).

value of the asset; (4) the means of, or plans for, self-support after the transfer; and (5) the individual's relationship to the person to whom the asset was transferred. 55 Pa.Code § 178.105(c).

Here, Gilroy attempted to rebut the ineligibility presumption through Popson's testimony that she transferred those assets to Decedent's daughters, not to ensure her eligibility for MA benefits, but solely because she only had been married to Decedent for a short period of time and did not think it fair to take from Decedent's estate. However, in finding Gilroy ineligible for benefits, the ALJ *refused to consider* Gilroy's attempt to rebut the presumption, holding that there *never* is an exception to the ineligibility provisions of 55 Pa.Code § 178.104(d). The ALJ's holding is contrary to well established case law and to DPW's regulations, which clearly give the applicant an opportunity to rebut the presumption and, thus, constitutes an error of law.[6]

Unfortunately, because the ALJ did not consider the *possibility* that Gilroy could overcome the ineligibility presumption, he made no findings of fact or credibility determinations pertaining to that issue. Accordingly, we vacate, and we remand the matter to DPW to remand to the ALJ to decide whether Gilroy rebutted the presumption of ineligibility and to make the necessary findings of fact and credibility determinations to support that decision.

### ORDER

AND NOW, this 9th day of April, 2008, the order of the Department of Public Welfare (DPW), dated June 12, 2007, is hereby vacated, and the matter is remanded to DPW for remand to the Administrative Law Judge for proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

**6.** In so holding, we reject DPW's argument that Gilroy had an obligation pursuant to 55 Pa.Code § 178.1(g) to take reasonable steps to obtain and make available for NFC those resources which are or may be available to her and that Gilroy's explanation that "it was the right thing to do" does not relieve her of that obligation. However, as 55 Pa.Code § 178.1(g) states, "[a]n applicant/recipient shall take reasonable steps to obtain and make available resources to which [s]he is, or may be entitled *unless [s]he can show good cause for not doing so.*" (Emphasis added.) Here, Gilroy attempted to show that she had good cause to turn down available resources.

We similarly reject DPW's assertions that we should affirm its determination because this matter is analogous to *Perna; Godown v. Department of Public Welfare,* 813 A.2d 954 (Pa.Cmwlth.2002); and *In re Estate of Wyinegar,* 711 A.2d 492 (Pa.Super.1998) (holding that the failure to take an election may jeop-

ardize an applicant's entitlement to MA benefits). Each of these cases is readily distinguishable from the matter here. In *Perna,* the applicant made no attempt to rebut the presumption that she disclaimed her elective share in her husband's estate for the purpose of qualifying for MA benefits. In *Wyinegar,* the *sole* purpose advanced in opposition to the applicant's taking a spousal election *was to ensure the continuation of the applicant's MA benefits;* thus, there could be no question as to the applicability of the presumption. Finally, in *Godown,* the applicant transferred his property to *his children* to "keep it in the family"; he was left virtually penniless, but he *remained* on the property and benefited from it until he had to go into a nursing home. In contrast, here, according to Popson, Gilroy gave the assets to the *Decedent's* daughters from a *previous marriage* and, in fact, had *no access* to those funds.