630 A.2d 550

**DEPARTMENT OF TRANSPORTATION, Petitioner,**

**v.**

**HERBERT R. IMBT, INC., by change of corporate name now known as HRI, INC., Respondent.**

**HERBERT R. IMBT, INC., by change of corporate name now known as HRI, INC., Petitioner,**

**v.**

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 29, 1993.

Decided Aug. 13, 1993.

574

John J. Robinson, Asst. Counsel, for petitioner/respondent, Dept. of Transp.

Carleton O. Strouss for respondent/petitioner, HRI, Inc.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

SMITH, Judge.

The Department of Transportation (DOT) and Herbert R. Imbt, Inc., by change of corporate name now known as HRI, Inc. (HRI) cross-petition for review of the May 7, 1992 decision of the Pennsylvania Board of Claims (Board) which determined that DOT breached a bridge construction contract with HRI and awarded $84,521.36 in damages. The issues presented in this consolidated appeal are whether the Board erred in awarding damages for anticipated profit and overhead for work that would have been performed under the contract; and whether the Board erred by deducting overhead recovered for work performed beyond the expiration of the contract from unabsorbed overhead for work performed during the original contract period, and in not awarding damages for idled equipment placed on standby due to DOT's breach of contract.[1]

## I.

On June 5, 1986, HRI and DOT entered into a highway bridge construction contract. After HRI commenced con-

---

1. This Court's scope of review of a decision of the Board is limited to a determination of whether an error of law was committed or whether findings of fact are not supported by substantial evidence. *Department of Transportation v. Anjo Constr. Co.*, 87 Pa.Commonwealth Ct. 310, 487 A.2d 455 (1985). It is not within the province of this Court to retry the case or to make independent factual findings and conclusions from the evidence. *C.J. Langenfelder & Son, Inc. v. Department of Transportation*, 44 Pa.Commonwealth Ct. 585, 404 A.2d 745 (1979).

struction activities, the United States Army Corps of Engineers (Corps) issued an order demanding that DOT and HRI cease filling operations on the site in Centre County as it violated the Clean Water Act, 33 U.S.C. §§ 1344–1387. DOT confirmed the cessation of most operations on the project by letter to HRI and stated that the anticipated length of delay was to be six to eight weeks, and that HRI should remove all construction equipment from the site. DOT applied to the Corps for a wetlands permit which was denied on May 12, 1987. After the United States Environmental Protection Agency advised DOT that any disturbed wetlands had to be remediated or restored to their original condition, DOT directed HRI to begin restoration work. On May 24, 1988, DOT issued an acceptance certificate indicating completion of the work.

Subsequently, HRI filed a statement of claim with the Board seeking $402,527.49 in damages for overhead, profit, standby equipment, and bond and railroad insurance. After a hearing, the Board found:

9. In designing the Mt. Eagle Bridge Project, [DOT] and/or its representatives and agents were aware that compliance with the Federal Clean Water Act would be necessary and that the general locale of the project included areas which were wetlands under the Act. The [DOT] intended to design the alignment of the project so as to avoid wetlands; however, by virtue of an error in identifying wetlands, the Department placed the alignment of the project within a wetland area.

. . . . .

13. Prior to accepting the bids for the contract, representatives of [DOT] were aware that a Wetlands Permit would be necessary for the performance of the contract work.

14. [DOT] did not advise HRI or the other bidders, prior to the bid opening, that a Section 404 Wetlands Permit from the Corps might be required.

Board Decision, pp. 4–5. The Board also found that it was DOT's responsibility to obtain the permit; the contract work

could not be performed without the permit; DOT warranted that the right-of-way would be provided; and DOT's actions in awarding the contract and issuing a notice to proceed was a positive misrepresentation.

The Board concluded that DOT breached its contractual relations with HRI by misrepresenting the nature of the project, by failing to provide adequate plans and specifications to resolve the wetlands issue to obtain a permit, and by failing to obtain a proper right-of-way. The Board stated that HRI was not able to recover the overhead and profit it anticipated for the original contract work and awarded HRI $84,521.36 in damages, refusing HRI's request for compensation for stand-by equipment.[2]

## II.

■ DOT's claim that it did not anticipate a need for the wetlands permit is clearly not supported by the record. The parties stipulated that prior to accepting bids on this project, an environmental evaluation was prepared which indicated that a consent agreement and wetlands permit will be obtained from the Corps, and that DOT received a letter from the Centre County Conservation District concerning the project which indicated that it appears to disturb wetlands and may require a permit. In *C.J. Langenfelder & Son, Inc. v. Department of Transportation*, 44 Pa.Commonwealth Ct. 585, 404 A.2d 745 (1979), this Court affirmed the Board's holding that DOT was liable for damages resulting from a delay caused by its failure to secure a permit from the Corps for

---

2. With respect to damages, the Board found that the contract price of the project was $1,924,498.20 of which $1,701,931.27 was estimated costs to perform the work and $222,566.93 was mark-up for overhead and profit. HRI was paid $321,109.75 for work completed under the contract, of which $285,880.59 was the estimated unit cost of performing the work actually completed, and $35,229.17 was for profit and overhead. In addition, HRI was paid $283,454.32 pursuant to change work orders on a force-account basis with $55,668.80 in mark-up, and was paid $133,698.89 for remediation work of which $27,147.60 was mark-up. The Board also found that any overhead or profit DOT paid pursuant to work orders was for work performed beyond the original contract and that DOT did not compensate HRI for overhead costs incurred upon the original contract.

dredging a marsh as part of a project to build 13,205 feet of highway and bridge because DOT's actions constituted a breach of contract as it amounted to a denial of access to the job site.

Further, DOT does not contest the Board's finding that the contract work could not be performed without the permit and has cited no authority to support the argument that it should be relieved of its obligation to provide access to the job site because the Corps failed to issue the permit. Since it was DOT's responsibility to obtain the permit, the contract did not provide any exceptions to the requirement that DOT secure all necessary rights-of-way as contained in Section 107.18 of the Publication 408 Specifications (1983) (Specifications), and the permit was essential to the contract, DOT breached the contract by failing to obtain the permit and is therefore liable for damages.

This Court has recognized that the victim of a breach of contract is entitled to damages for the net amount of losses caused and gains prevented by the breach to the extent that the evidence affords a sufficient basis for estimating the amount with reasonable certainty. *C.J. Langenfelder; Department of Highways v. S.J. Groves & Sons, Co.*, 20 Pa.Commonwealth Ct. 526, 343 A.2d 72 (1975). In *Coatesville Contractors & Engineers, Inc. v. Borough of Ridley Park,* 509 Pa. 553, 506 A.2d 862 (1986), a contractor was denied full access to a construction site due to the owner's failure to drain a lake as provided in the contract documents. After the work was completed, the contractor sought additional money for extra work caused by owner's failure to provide full access to the site. The owner attempted to avoid payment on the basis of several exculpatory clauses. However, the Pennsylvania Supreme Court held that exculpatory provisions in a contract cannot be raised as a defense where there is an affirmative or positive interference by the owner with the contractor's work, or there is a failure on the part of the owner to act in some essential matter necessary to performance of the work.

■ With respect to damages, DOT argues that because the provisions under the contract were not ignored and the Board's award is based on a theoretical calculation using an anticipated mark-up which included overhead and profit, HRI is not entitled to damages. The Specifications provide, in pertinent part:

**104.02 ALTERATIONS OF DRAWINGS OR WORK—** The Department reserves the right to order, at any time during the progress of the work, increases or decreases in quantities and alterations in the construction drawings or specifications, including alterations in the grade or alignment of the road or structures, as may be necessary or desirable ...

. . . . .

When an item of work is eliminated, reimbursement of actual expenses will be made as specified in Section 110.04.

. . . . .

**110.03 ADDITIONAL WORK, EXTRA WORK, AND EXTRA WORK ON A FORCE ACCOUNT BASIS—**

. . . . .

**(d) Force–Account Work** ...

**7. Overhead and Profit.** Except as specified in Section 110.03(d)4, to cover all administration, general superintendence, other overhead, bonds, insurance, anticipated profit, and use of small tools and equipment, for which no rental is allowed, add 25% to the labor cost, the material cost, and the equipment cost and, when applicable, add 2% to the total force-account invoice for subcontract work.

**110.04 ELIMINATED ITEMS—**Payment for eliminated items of work will be made for the actual costs incurred prior to elimination, and will be calculated, in accordance with Section 110.03(d).

HRI received payment at the contract unit price for all original contract work actually performed and was paid for additional work on a force-account basis. As the Board determined, however, DOT could have terminated the contract

pursuant to Section 108.08(e) of the Specifications and substantially reduced or eliminated its obligation to pay further compensation to HRI. Instead, DOT chose to direct HRI to remain available to return to the site on short notice to perform the original contract work. This directive remained in effect for 374 days until DOT directed HRI to perform the remediation work, which the parties agree was extra work and not part of the original contract.

 Finally, DOT argues that the Board improperly relied upon *Department of Community Affairs v. Craftech International, Ltd,* 72 Pa.Commonwealth Ct. 162, 456 A.2d 247 (1983), in granting the award as HRI has not incurred any actual costs upon which overhead and profits were not paid by DOT. In *Craftech International, Ltd.,* a contractor sued the Department of Community Affairs seeking damages it incurred as a result of the Department's delay in preparing foundations on which it was to construct community centers in accordance with their contract. This Court affirmed the Board's grant of damages for costs incurred as a result of theft of building materials and vandalism to partially completed structures, as it determined that the necessary expense for replacement and repair of the stolen and destroyed materials was a foreseeable consequence of the breach and was properly included in the measure of damages. The Board was reversed to the extent that it failed to also award the full amount of lost profit expected under the contract. *Craftech International, Ltd.* does not stand for the proposition, as DOT contends, that the party must have incurred actual costs in order to collect damages for breach of a contract. To the contrary, the appropriate measure of damages is the net amount of losses caused and gains prevented by the breach. *C.J. Langenfelder, Inc.*

None of the Board's findings of fact are specifically identified by DOT as being unsupported by the record, and DOT merely argues that HRI's costs were never presented to the Board. However, John R. Kulka, Vice President of HRI, testified extensively before the Board regarding the costs associated with the contract. In addition, the record contains

detailed bid sheets which Kulka testified were used to formulate the cost estimate and a bid summary detailing the costs to do various items of work. DOT presented no evidence to counter HRI's evidence of its estimated costs. Kulka's testimony and the supporting documentation clearly constitute substantial evidence to support the Board's findings regarding the dollar amounts necessary to determine the appropriate measure of damages.[3]

## III

With respect to HRI's appeal, it argues that the Board inappropriately modified the measure of damages by granting DOT credit against mark-up recovered after the expiration of the original contract period. The Board reasoned that the credit was appropriate because the remediation work was necessary due to the breach and any benefit received should be credited against any detriment. The Board further stated that "[i]n a sense, it was not extra work, but replacement work that was merely paid for as extra work because it was not included as a contract item. The work was directly related to the breach, was paid for and was work in lieu of the original contract work that was not performed." HRI cites *I.A. Constr. Corp. v. Department of Transportation*, 139 Pa.Commonwealth Ct. 509, 591 A.2d 1146 (1991), and argues that the Board's reasoning would be correct if the replacement work occurred within the same time period as the original contract.

In *I.A. Constr. Corp.*, a contractor incurred unanticipated costs due to a material misrepresentation in DOT's drawings which served as the bases for the bid. This Court held that the Board erred in failing to apply the force-account provisions of the contract in calculating the damages due

---

3. In calculating the damages, the Board deducted $35,299.17, the amount of mark-up HRI actually received under the contract, from $222,566.93, its expected mark-up, and determined that HRI was entitled to $187,337.76. The Board then deducted credit for $55,668.80 in mark-up received pursuant to the change work order, $27,147.60 in mark-up with respect to the wetlands remediation work, and $20,000 for a bonus that was not paid to a subcontractor. In this appeal, HRI only challenges the $27,147.60 credit.

because work not contained in the contract was required. *I.A. Constr. Corp.* does not stand for the proposition that replacement work can only be considered for calculating damages when such work took place within the time frame of the original contract. Here, payment was made to HRI on a force-account basis for the remediation work and HRI does not contest that it was not appropriately compensated for that work. As the remediation work was directly related to DOT's breach, the Board properly credited HRI's damages to reflect compensation received for the remediation work.

■ HRI further argues that it is entitled to recover stand-by equipment costs. HRI does not contest the Board's findings that it owns the equipment and that it seeks damages for equipment which was not on the project site but in use on other projects. Kulka admitted that he could not indicate where or for how long pieces of equipment were being used during the contract period. Since DOT directed HRI to remove the equipment from the site, and the evidence does not afford a sufficient basis for estimating the amount of damages for standby equipment costs, the Board properly refused HRI's request for such damages.

The Board's award placed HRI in the same position in which it would have been absent DOT's breach. The length of the contract was 374 days and the delay time before cancellation of the project was approximately one year. Since the Board determined that HRI was entitled to its mark-up for the contract, HRI did not lose any anticipated profit or overhead for the year in question as a result of the breach. In addition, since HRI received the benefit of the remediation work in that it was extra work which would not have been required absent the breach, it is not entitled to further damages than the $84,521.36 awarded by the Board. The order of the Board is affirmed.

### ORDER

AND NOW, this 13th day of August, 1993, the order of the Board of Claims is affirmed.