# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gibraltar Rock, Inc.,
                   Petitioner

          v.

Pennsylvania Department of
Environmental Protection,
                   Respondent

:
:
:
:
:
:
:
:
:
:

No. 500 C.D. 2020

Argued: November 8, 2023

BEFORE:   HONORABLE RENEE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH                  FILED: May 8, 2024

This appeal comes to us on remand from the Supreme Court of Pennsylvania in *Gibraltar Rock, Inc. v. Pennsylvania Department of Environmental Protection*, 286 A.3d 713 (Pa. 2022) (*Gibraltar Rock II*), which reversed the decision of this Court in *Gibraltar Rock, Inc. v. Pennsylvania Department of Environmental Protection*, 258 A.3d 572 (Pa. Cmwlth. 2021) (*Gibraltar Rock I*), *rev'd and remanded*, *Gibraltar Rock II*. In *Gibraltar Rock I*, we reversed the decision of the Pennsylvania Environmental Hearing Board (Board) that rescinded Gibraltar Rock, Inc.'s (Petitioner) mining permits issued by the Department of Environmental Protection (DEP) and remanded to the Board. Petitioner appealed to our Supreme Court. The Supreme Court vacated our order and remanded the matter to this Court for a determination of the single question of whether the decision of the Board to rescind, rather than remand, the permits was supported by substantial evidence. We affirm.

# I. Facts and Procedural History

The facts and procedural history of this case have been set forth at length in our original opinion, *Gibraltar Rock I*, and the opinion rendered by the Supreme Court in *Gibraltar Rock II*. We recount here only those necessary to this opinion.

For the past 22 years, Petitioner has attempted to obtain and renew permits for rock quarrying on land located on a 241-acre property in New Hanover Township (Township), near the northern edge of Montgomery County. The permits include a non-coal surface mining permit, a national pollutant discharge elimination system permit (NPDES),[1] and an authorization to mine permit. The permits were originally issued to Petitioner in 2005. The Township and several citizens and citizen groups, "Paradise Watchdogs," "Ban the Quarry," and John C. Auman, have opposed the development of the rock quarry. Litigation over zoning issues ensued for years, which required a number of permit extensions.[2] Due to the passage of time, Petitioner was also required, by regulation, to seek renewal of the NPDES permit.[3]

Petitioner's property is located adjacent to a former industrial site, the Hoffmansville Road and vinyl chloride site (Hoff VC Site). In 2011, DEP discovered that the Hoff VC Site was contaminated with hazardous substances, including several volatile organic compounds (VOCs), semi-volatile organic compounds (SVOCs), and

---

[1] The NPDES permit is required by the federal Clean Water Act, 33 U.S.C. §§ 1251-1388. The NPDES permit sets limits on the pollutants that a permittee can discharge into water within the United States, imposes monitoring and reporting requirements, and contains other provisions to ensure that the discharge does not harm water quality or public health.

[2] *See In re Gibraltar Rock, Inc.* (Pa. Cmwlth., No. 2287 C.D. 2011, filed October 11, 2013) (unreported).

[3] *See* 25 Pa. Code § 77.128(a), which provides that "[a] permit will be issued for the duration of the mining and reclamation operation except for the NPDES permit, which shall be renewed every 5 years."

other pollutants that have seeped into the groundwater, causing contamination in a number of residential drinking water wells in a geographic area that includes Petitioner's proposed rock quarry.[4]

While reviewing Petitioner's most recent permit renewal applications, DEP instructed Petitioner to provide updated monitoring well sample results, and to address how Petitioner intends to monitor and provide for the possibility that contaminants from the Hoff VC Site may migrate onto its property due to its quarrying activities. Petitioner, through its technical consultant, EarthRes, submitted its response, proposing to increase the samplings at its own monitoring wells and at those located on the Hoff VC Site, once it opened the quarry. Assuming that final remediation of the Hoff VC Site would not be completed before quarry operations began, Petitioner explained that repeated sampling at its wells and at the Hoff VC Site would detect migration of contaminants. Petitioner agreed to treat any contaminants that appeared in groundwater on its property.

In 2016, DEP discovered a concrete vault on the Hoff VC Site containing various hazardous compounds that had never been remediated. On January 4, 2017, DEP directed Petitioner to address the potential for the contaminants discovered in the concrete vault to migrate onto Petitioner's property. Petitioner again responded that it would monitor the groundwater for contaminants and, if discovered, remediate them. On March 2, 2017, DEP notified Petitioner that it had completed its technical review of Petitioner's permit renewal application but required a new mining and reclamation bond. Petitioner provided the new reclamation bond. A draft NPDES permit was published in the Pennsylvania Bulletin on July 15, 2017.

---

[4] The Hoff VC Site was officially designated as a cleanup site under the Hazardous Sites Cleanup Act (HSCA), Act of October 18, 1988, P.L. 756, 35 P.S. §§ 6020.101-6020.1305.

3

On August 11, 2017, the Township, which objected to the permit renewal application, requested DEP to require Petitioner to produce a fate and transport analysis[5] that would measure the extent and movement of contaminants in groundwater, *i.e.*, the "plume" of discharge from the Hoff VC Site. In response, EarthRes prepared a "Fate and Transport Analysis and Assessment of Hoff VC Site Contaminant Migration." This assessment, referred to as the "EarthRes Model," concluded that the plume would not enter the proposed quarry mining area. Specifically, it concluded that the pumping of water at the quarry was unlikely to draw contamination from the Hoff VC Site because groundwater generally flows south and west from the Hoff VC Site, and Petitioner's quarry will be located south and east of the Hoff VC Site. EarthRes concluded that because the quarry footprint would develop slowly, Petitioner would not do significant groundwater pumping for approximately 15 years, by which time the contaminants at the Hoff VC Site would have been resolved, either by remediation or by natural degradation. Petitioner posted a $1,422,935.00 reclamation bond. On July 2, 2018, DEP renewed Petitioner's surface mining and NPDES permits.

The Township appealed and objectors, Paradise Watchdogs, Ban the Quarry, and John C. Aumen, intervened in the Township's appeal. The Board held five days of hearings.

The Township presented the testimony of Charles Francis McLane III and Toby Kessler, who are licensed geologists. McLane opined that the EarthRes Model was flawed. Based on his own model, McLane opined that pumping water at the quarry

---

[5] A fate and transport model is used to evaluate hydrogeologic contaminant movement from a source, predicting estimated contaminant concentration, direction, and arrival time to a selected destination while accounting for parameters such as contaminant degradation and aquifer porosity. (Board Adjudication, April 24, 2020 (Adjudication), at 34.)

4

would draw contaminated groundwater at the Hoff VC Site eastward in the direction of the quarry and away from its generally westward flow. Kessler opined that at least one contaminant reported by Petitioner in a monitoring well had originated at the Hoff VC Site.

Three DEP employees testified. Colin Wade, DEP's supervisor of the Hoff VC Site, explained that the remediation of the concrete vault was completed, and that DEP will continue sampling its monitoring wells at the site. He testified that DEP has initiated a pilot program to evaluate the groundwater contamination for remediation. Michael P. Kutney, the permits chief at DEP's Pottsville Office, and Michelle Hamlin, a geologist specialist, testified that DEP accepted the EarthRes Model when it reviewed Petitioner's permit renewal application. The witnesses agreed with the conclusion in the EarthRes Model that the groundwater at the Hoff VC Site would not migrate to the quarry. However, they admitted they had they learned of McLane's criticisms of the EarthRes Model prior to renewing Petitioner's permits, they would have required Petitioner to respond before rendering their decision.

On April 24, 2020, the Board issued its 84-page Adjudication, with 253 Findings of Fact and 20 Conclusions of Law, concluding that DEP erred by issuing the permits in light of the ongoing risks posed by the groundwater contamination at the adjacent Hoff VC Site. Based on the evidence presented at the hearings, the Board determined that the DEP improperly issued the permits because Petitioner failed to affirmatively demonstrate, *inter alia*, that the operation of its quarry complied with the Noncoal Surface Mining Conservation and Reclamation Act (Noncoal Act)[6]

---

[6] Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§ 3301-3326. The purpose of the Noncoal Act includes protecting land, decreasing soil erosion, preventing pollution of rivers and streams, generally improving the use and enjoyment of the lands, and most importantly here, preventing and eliminating hazards to health and safety. Section 2 of the NonCoal Act, 52 P.S. § **(Footnote continued on next page…)**

5

requirement that it "will not cause pollution to the waters of the Commonwealth." Section 8(a)(3) of the Noncoal Act, 52 P.S. § 3308(a)(3). Relying on expert testimony presented by the Township, the Board cited the risk that quarrying activities would likely intercept and spread contamination plumes emanating from the Hoff VC site, leading to groundwater contamination. The Board entered an order rescinding the permits without prejudice, allowing Petitioner to amend its existing permit applications or submit new permit applications that would address the Board's concerns.

In serving its function as factfinder and arbiter of credibility, the Board made detailed findings of fact to support these conclusions. Specifically, the Board found that, despite DEP's clean-up efforts, more than a dozen contaminants, some of

---

3302; *see Tinicum Township v. Delaware Valley Concrete*, 812 A.2d 758, 760 n.4 (Pa. Cmwlth. 2002) ("The Non[c]oal Act was passed to address the negative [effects] of surface mining by improving conservation of the land, protecting the health and safety of citizens and wildlife, and limiting pollution."). No permit may be issued unless the applicant affirmatively demonstrates that

> (1) The permit application is accurate and complete and that all requirements of this act and the regulations promulgated hereunder have been complied with.
> (2) The operation and reclamation plan contained in the application can be accomplished as required by this act and regulations.
> (3) The operation will not cause pollution to the waters of this Commonwealth.

Section 8 of the Noncoal Act, 52 P.S. § 3308. The applicable regulations provide that a permit, permit renewal, or revised permit application may not be approved unless the applicant affirmatively demonstrates and DEP finds in writing that, among other things, (1) the permit application is accurate and complete and that the requirements of the act, the environmental acts and regulations have been complied with; (2) the applicant has demonstrated that the noncoal mining activities can be reasonably accomplished as required by the act, and this chapter under the operation and reclamation plan contained in the application; and (3) the applicant has demonstrated that there is no presumptive evidence of potential pollution of the waters of this Commonwealth. 25 Pa. Code § 77.126(a).

Among other requirements, the applicant must show that it will ensure the protection of the quality and quantity of surface water and groundwater, both within the permit area and adjacent areas, as well as the rights of present users of surface water and groundwater. 25 Pa. Code § 77.457(a). *See also* 25 Pa. Code § 77.521 (mining to be planned and conducted to minimize disturbances to the prevailing hydrologic balance in the permit and adjacent areas).

which can persist for more than 100 years absent remediation, continue to be present at the Hoff VC Site at levels that exceed the medium-specific concentration established for used residential aquifers. (Findings of Fact (FOF) 113-24.) It found that samplings from monitoring wells at the Hoff VC Site in 2017 and 2019 uncovered the presence of previously undetected chemical contaminants. (FOF 125.) It determined that "the contaminated groundwater plume already extends onto [Petitioner's] permit area" and that "[v]ery little distance remains for it to travel into the pits." (Adjudication, at 61.) It further found that monitoring results confirm that contaminants are being encountered in the groundwater moving toward the quarry. (FOF 244.) It also determined that DEP issued the permits based on the belief (which turned out to be mistaken) that contamination from the Hoff VC Site would likely never reach the quarry. (FOF 168.) According to the Board, "[t]here is simply no doubt that quarry pumping will expand pollution." (Adjudication, at 54.)

The Board noted "[t]here is no record evidence that anyone at [DEP] considered the effect that quarry pumping would have on the investigation, remedial design, or remedial action at the Hoff VC Site." (FOF 138.) Critically, the Board noted that DEP's permit chief, Michael Kutney, testified that "he would not have issued the permits if he knew then what he knows now" and that "[Petitioner] could expect to receive a letter requesting further explanation regarding the inconsistencies revealed at the hearing." (FOF 248-49.) In the Board's view, DEP was "premature" in issuing the permits "in light of the unanswered questions regarding the [Hoff VC] Site." (Adjudication, at 70-79.)

Based on the extensive factual findings and applicable law, the Board concluded that the "spread of multiple hazardous contaminants in the groundwater that would result from [Petitioner's] quarry pumping constitutes presumptive evidence of

7

potential pollution that cannot be permitted consistent with the Noncoal Act. 52 P.S. § 3308(a); 25 Pa. Code § 77.126(a)(3)." (Adjudication, at 203.) Also, "[Petitioner] has not shown that the quarry can be operated without disturbance to the prevailing hydrologic balance, without deleterious changes in groundwater quality, and without causing water pollution in violation of 25 Pa. Code § 77.521 and 52 P.S. § 3308(a). *See also* [the associated regulations,] 25 Pa. Code § 77.457." *Id.* It further found that DEP did not uphold its constitutional duties as trustee of Pennsylvania's public natural resources under article I, section 27 of the Pennsylvania Constitution[7] because it did not "fully consider and understand the environmental effects of" issuing the permit, and it "failed to act with prudence and impartiality as the trustee of Pennsylvania's public natural resources by permitting [Petitioner's] quarry." *Id.* at 204.

Regarding DEP's plans to remediate the Hoff VC Site, the Board determined that DEP is "not committed to anything other than continued monitoring if the monitoring wells show additional contamination" and that DEP simply says, "[a] series of scientific determinations must be made presently, as well as going forward." *Id.* at 62 (citation omitted). It further noted that "[DEP] has not scheduled any further cleanup measures at the Hoff VC Site yet, and natural attenuation does not appear to be solving the problem anytime soon." *Id.* at 61. The Board also found that DEP was not at that time "taking any action" with respect to the contamination of the monitoring

---

[7] Article I, section 27 of the Pennsylvania Constitution provides:

**Natural Resources and the public estate.**
The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

8

wells and that "[DEP] has no immediate or specific plans at this time to conduct further studies and remediation activities at the Hoff VC [] Site, although there is no doubt that there will be such activities." (FOF 133.) With respect to the uncertainty of the clean up at the Hoff VC Site, the Board expressed its concerns as follows:

> There is reason to believe that not all substances have been identified. Certainly not all sources have been identified and ameliorated, notwithstanding [DEP's] interim measures. There is no consistent trend yet on whether groundwater is improving, getting worse, or stabilizing despite [DEP's] interim measures. Contamination at the site will persist indefinitely absent remediation. Natural attenuation alone cannot be counted upon to resolve the contamination. Yet there are no current plans for investigation, remedial design, or remediation.

> * * * *

> The Hoff VC Site still needs to be cleaned up. The plume of contaminated groundwater appears to be spreading even without the more active migration that quarry pumping will cause. The scope of the groundwater problem in particular and the contamination of the site in general has not been defined, let alone remediated. . . . [DEP] in vague terms appears to be batting around internally the idea of some sort of *in situ* treatment of groundwater, but there are no concrete specific plans for further investigation or remediation. Everything is up in the air. But what is certain is that somebody is going to be required to pay for future work.

(Adjudication, at 47, 69-70.)

Finally, and relevant to the only substantive challenge raised by Petitioner on appeal, the Board addressed the remedy:

> Clearly, [DEP] has issued the [] permits prematurely in light of the unanswered questions regarding the Hoff VC [S]ite. As investigation and remediation of that hazardous site evolves, it may become clear that quarrying can be

9

accomplished in harmony with the cleanup. **However, given the lack of any momentum on that site, we are concerned that a remand pending HSCA activities would drag on indefinitely, again giving rise to the staleness concerns that required a remand in our first Adjudication. Therefore, we will rescind the permits but without prejudice to [Petitioner's] right to reapply for the permits if remediation of the Hoff VC [S]ite matures to the point that it becomes apparent that there will be no presumptive evidence of potential pollution and quarrying will not unreasonably interfere with the HSCA cleanup**.

(Adjudication, at 78-79) (internal citations omitted) (emphasis added).

On appeal, Petitioner does not challenge the Board's conclusion that DEP erred in issuing the permits. Instead, Petitioner asserts that the relief granted by the Board, *i.e.*, its decision to **rescind** the permits rather than **remand** the matter to DEP to allow DEP and Petitioner the opportunity to address the Board's concerns, was an abuse of discretion. (Petitioner's Br. at 50-51.) In support, it argues that substantial evidence does not support the Board's finding that there is a "lack of momentum" at the Hoff VC Site or that DEP's cleanup activities will drag on indefinitely. It argues that, to the contrary, the record shows that DEP is actively engaged in cleanup. It further asserts that the record demonstrated a constant exchange of information between Petitioner and DEP about Petitioner's agreement to address migration of contaminants onto its property. Specifically, Petitioner points to the Board's findings that DEP's steps to remediate the Hoff VC Site thus far were "interim" measures, meaning DEP still plans more comprehensive mitigation (FOF 135); DEP continues to monitor and take samples from the site and is planning to "develop a pilot study with a goal of gathering data that would be added to the administrative record" (FOF 57); DEP "is considering further remediation possibilities," including "*in situ* treatment of groundwater" (FOF 56); "there is no doubt" DEP will "conduct further studies and

10

remediation activities" at the Hoff VC Site (FOF 133); and the Hoff VC Site "remains the subject of an ongoing investigation and there is no plan to close out remediation efforts at the site." (FOF 134.) Petitioner argues that these findings are inconsistent with the Board's finding that DEP has no plans for the Hoff VC Site remediation.

Petitioner also points to the testimony of Colin Wade, the DEP official in charge of remediation at the Hoff VC Site, which it maintains "directly contradicts" the Board's finding in FOF 133 that DEP has no immediate or specific plans at this time to conduct further studies and remediation efforts at the Hoff VC Site. (Petitioner's Br. at 36.) Wade testified that DEP regularly does testing at the Hoff VC Site and that DEP "would not continue to sample the site if it had no plans to do anything." (Reproduced Record (R.R.) at 153a.) He also testified that "the current goal of [DEP's] actions has been to develop a pilot study with a goal of gathering data that would be added to the administrative record to determine what type of administrative response can be conducted at this site for groundwater contamination" and that "[DEP] has no plans currently to terminate either its investigation or its current activities related towards it[s] pilot [study] at the [Hoff VC S]ite." (R.R. at 60a, 81a.) Wade also testified that DEP tests the Hoff VC Site regularly. *Id.* at 152a. Petitioner submits that Wade's testimony in this regard "does not support FOF 133" that DEP "has no immediate and specific plans to conduct further studies or remediation activities at the Hoff VC Site." (Petitioner's Br. at 36-37.)

Petitioner further contends that preparing an application for a noncoal surface mining permit and an NPDES permit is "enormously expensive" and time-consuming, and that to require Petitioner to start all over again is "manifestly unjust." *Id.* at 50. Further, it asserts, on remand, DEP may consider the concerns raised by

11

McLane and credited by the Board.[8] According to Petitioner, a remand will allow DEP to evaluate the issue and include conditions to address the concerns identified by the Board.

## II.    Discussion

The Board reviews DEP's issuance of a permit *de novo*, meaning it can properly consider evidence produced after DEP's action in question and in anticipation of litigation. *United Refining Co. v. Department of Environmental Protection*, 163 A.3d 1125, 1136 (Pa. Cmwlth. 2017). The Board's duty is to determine if DEP's action can be sustained or supported by the evidence taken by the Board. *Warren Sand & Gravel Co. v. Department of Environmental Resources*, 341 A.2d 556, 565 (Pa. Cmwlth. 1975). If DEP acts pursuant to a mandatory provision of a statute or regulation, then the only question before the Board is whether to uphold or vacate DEP's action. If, however, DEP acts with discretionary authority, then the Board, based upon the record made before it, may substitute its discretion for that of DEP and modify any DEP action based on the evidence presented before the Board. *Id.*; *Marcon, Inc. v. Department of Environmental Resources*, 462 A.2d 969, 971 (Pa. Cmwlth. 1983); *Pequea Township v. Herr*, 716 A.2d 678, 698 (Pa. Cmwlth. 1998).

It is well-settled that the Board has the clear authority to revoke permits. *See, e.g.*, *Sentinel Ridge Development, LLC v. Department of Environmental Protection*, 2 A.3d 1263, 1267 (Pa. Cmwlth. 2010) ("After [] DEP conducts its review, [the Board] will either restore the permit or revoke it."); *Berks County v. Department of Environmental Protection*, 894 A.2d 183, 193 (Pa. Cmwlth. 2006) (where the petitioner sought to have permits rescinded by the Board, the Board's refusal to do so was upheld).

---

[8] This argument is perplexing in light of the undisputed fact that McLane's testimony was that the proposed mining will cause pollution.

The Board's decision to rescind, rather than remand the matter to DEP for further review, is an exercise of the Board's discretion. "[T]his Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith, or blatant abuse of discretion." *Pennsylvania Game Commission v. Department of Environmental Resources*, 509 A.2d 877, 880 (Pa. Cmwlth. 1986) (*en banc*). "An abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied[,] or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Sierra Club v. Department of Environmental Protection*, 211 A.3d 919, 924-25 (Pa. Cmwlth. 2019). This Court may not substitute judicial discretion for administrative discretion in matters such as these, which involve technical expertise, and which are within the special knowledge and competence of the members of the Board. *Swartwood v. Department of Environmental Resources*, 424 A.2d 993 (Pa. Cmwlth. 1981). "There is no doubt, of course, that the findings of fact necessary to support such orders must be based upon substantial evidence, but, as we have stated before, substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Department of Environmental Resources v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974).

The Board's decision to rescind the permits, rather than remanding the matter to DEP for further review, did not lack the support of substantial evidence or constitute an arbitrary and unreasonable abuse of discretion contrary to law. This case at its core is about health, safety, and public welfare. The Board clearly has the legal authority to rescind a permit if mining would or is causing an unavoidable and serious hazard to health and safety. *See* 52 P.S. § 3302 (purposes of Noncoal Act), 52 P.S. § 3308 (permit requirements). The Board determined that the permits should not have been issued because Petitioner did not satisfy a critical requirement for the issuance of

a permit under the Noncoal Act, specifically the permitting requirement to show "no presumptive evidence of potential pollution of the waters of the Commonwealth." 52 P.S. § 3308(a). The statute dictates that "no permit shall be issued" unless the applicant affirmatively demonstrates that it meets the statutory requirements. 52 P.S. § 3308(a). The Board clearly stated in the Introduction section of the Adjudication that this was the reason for rescinding the permits:

> [T]here is really only one issue in this appeal: Did [DEP] err by issuing the permits in light of the risk posed by the groundwater contamination at the adjacent Hoff VC [] Site? For the reasons that follow, we hold that it did, and therefore, we rescind the permits.

(Adjudication, at 2.)

Petitioner did not appeal any aspect of the determination that it failed to meet the criteria for issuance of a permit. The Board's uncontested conclusion that the permits should never have been issued in the first place because Petitioner failed to meet the statutory criteria alone is enough to validate the Board's rescission of the permits. For example, in *Leatherwood, Inc. v. Department of Environmental Protection*, 819 A.2d 604 (Pa. Cmwlth. 2003), DEP issued a permit to construct and operate a landfill near an airport. Following an appeal by the objectors, the Board revoked the permit because it was issued without an analysis of, and remedy for, a known risk of birds to aircraft in the vicinity of the landfill in violation of state and federal regulations. The objectors presented credible expert evidence on the issue, and DEP acknowledged its fault. We affirmed revocation of the permit.

Moreover, once it was determined that the permits should not have been issued, the Board had broad discretion in selecting a remedy. This Court has held that "[r]emedies and accompanying sanctions will not be disturbed on appeal absent a showing of manifest and flagrant abuse of discretion or purely arbitrary execution of

14

the agency's duties or functions." *Eckhart v. Department of Agriculture*, 8 A.3d 401, 407 (Pa. Cmwlth. 2010) (quoting *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 (Pa. 1991)). Administrative bodies that have expertise in specific areas of law are to be entrusted to fashion administrative remedies that are fair and appropriate. *Id.* Finally, there is no statutory right to have a permit remanded. *See generally* Sections 1-26 of the Noncoal Act, 52 P.S. §§ 3301-3326.

Petitioner wholly fails to meet its burden to show that the Board abused its discretion. Although it baldly claims that the Board's decision to rescind the permits was an abuse of discretion, Petitioner fails to address the legal standard to establish an abuse of discretion or to establish that the standard is satisfied. Petitioner has offered nothing showing that the Board's action was fraudulent, an abuse of power, or purely arbitrary, or that any such abuse may have been manifest and flagrant. Also, Petitioner cites no authority as support for its contention that the Board abused its discretion or was "manifestly unjust" in determining that the permits should be rescinded rather than remanded. The argument is seriously undeveloped. There is no discussion whatsoever of what additional efforts or expenses are involved in obtaining new permits. Nevertheless, if, in fact, there are any economic consequences in having to reapply for the permits, we cannot fault the Board. We find no hardship in imposing the time and costs of reapplying for permits upon Petitioner, which failed, in the first instance, to demonstrate that its quarrying activities "will not cause pollution to the waters of the Commonwealth." 52 P.S. § 3308(a)(3). Thus, Petitioner has not shown that the legal standard for abuse of discretion has been met.

Instead, and despite its concession that the permits should not have been granted, Petitioner attempts to undermine the factual support concerning the Board's decision, arguing that certain findings of the Board were not supported by substantial

15

evidence – specifically, the Board's findings that (1) DEP had no immediate or specific plans to conduct further studies or remediation activities at the Hoff VC Site (*i.e.*, FOF 133); and (2) there was a lack of momentum at the Hoff VC Site. A thorough review of the record, however, will not support this contention. Our careful review of the entire record in this case permits us to conclude that these findings of fact made by the Board are amply supported by substantial evidence.[9]

Central to the Board's decision was the lack of evidence regarding how quarry pumping would affect the Hoff VC Site remediation. Throughout the Adjudication, the Board detailed its concerns about the uncertain status of the Hoff VC Site when faced with the prospect of having a nearby quarry actively pumping groundwater. The Board identified its specific concerns that there were no concrete plans to remediate the contamination plume at the Hoff VC Site, which is moving and expanding in size, as follows: only interim responses have been taken thus far, and currently, other than periodic sampling, there is no active investigation or remediation taking place and there is no schedule for taking any action (FOF 135-136); DEP intends at some unspecified time to develop a pilot study with a goal of gathering data that would be added to the administrative record to determine what type of interim response can be conducted at the site for groundwater contamination (FOF 137); source contaminants appear not to have stabilized notwithstanding DEP's interim measures (FOF 145); DEP's HSCA program is not currently taking any action with respect to the contamination in monitoring well OW-6, which is no more than 500 feet from Petitioner's southern pit and showing increasing concentrations of contaminants, and it has no immediate plans to take any action (FOF 150-151, 154); the extent of the

---

[9] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Department of Environmental Resources v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974).

16

contaminated groundwater plume from the Hoff VC Site has not been determined (FOF 158); there are not enough wells in place to fully define the extent of the contamination plume (FOF 226); DEP's investigations to date have not included any consideration of how quarry pumping would affect remediation of the Hoff VC Site (FOF 138, 140); DEP has not performed any analysis of what treatment processes would work or how they would or could be installed, or how quickly they could be brought online, or what would be done with contaminated water in the pit in the meantime (FOF 241); and there has been little coordination among DEP offices responsible for the matter (FOF 162).

The Board also concluded that "every step in [DEP's] analysis is either wrong or does not support issuance of the permits," that "[t]here has been no analysis of the economic or technical feasibility of any treatment option at the quarry," and that "[DEP] has yet to do any evaluation of how to treat the existing groundwater plume, let alone the expanded plume that would accompany quarry pumping." (Adjudication, at 61, 64, 66.) It is clear from these observations that the Board was not at all confident that DEP was proactively managing the situation and that unless and until these uncertainties were addressed and abated, the permits could not continue to remain active. We cannot characterize this as an abuse of discretion.

We also reject Petitioner's attempt to have this Court reweigh the evidence. Petitioner seems to argue that because contrary evidence exists, a finding of fact is not supported by "substantial evidence." Petitioner selectively highlights contrary evidence and invites this Court to reevaluate and reweigh evidence and credibility determinations. For example, Petitioner takes issue with FOF 133, which states:

> [DEP] has no immediate or specific plans at this time to conduct further studies and remediation activities at the Hoff VC [] Site, although there is no doubt that there will be such activities.

17

Petitioner argues that testimony that **something** in the way of testing and remediation was occurring at the Hoff VC Site supports a conclusion opposite of what the Board found. (Petitioner's Br. at 25-26, 33-39.) However, the fact that DEP was occasionally testing some wells, and **planning** to conduct a pilot study, does not mean that the Board was required to leave the permits in place and remand the matter to DEP. It was entirely up to the Board, in its discretion, based upon its specialized knowledge and experience, to decide if the remedial measures and efforts by DEP at the Hoff VC Site justified a remand, as opposed to the rescission of the permits. Based on the evidence it found credible, it concluded that there are no concrete plans to remediate the Hoff VC Site, which is expanding in size, and that known and unknown sources of dangerous contaminants still exist at the Hoff VC Site, many of which have migrated and will migrate farther if there is pumping in connection with Petitioner's quarrying activities. We have been instructed by our Supreme Court that in the absence of a purely arbitrary exercise of an agency's duties or functions, judicial discretion may not be substituted for administrative discretion. We are told that our review is particularly restrictive where an administrative agency resolves complex questions of technology. *Commonwealth v. Harmar Coal Company*, 306 A.2d 308, 321 (Pa. 1973); *East Pennsboro Township Authority v. Department of Environmental Resources*, 334 A.2d 798, 804 (Pa. Cmwlth. 1975). *See also Westinghouse Electric Corporation v. Department of Environmental Resources*, 705 A.2d 1349, 1357 (Pa. Cmwlth. 1998). Moreover, to accept this argument by Petitioner would be to ignore the more significant portions of the record which supported the Board's decision to rescind the permits, instead of remanding the matter to DEP. Petitioner is not permitted to "pull bits and pieces of evidence from the record to support alternative findings of fact." *Brockway Municipal Authority v. Department of Environmental Protection*, 131 A.3d 578, 587

18

(Pa. Cmwlth. 2016). Weighing the evidence and assessing credibility are the sole prerogatives of the Board. *Department of Transportation v. Herbert R. Imbt, Inc.*, 630 A.2d 550, 551 n.1 (Pa. Cmwlth. 1993). As such, Petitioner's arguments are fundamentally at odds with Pennsylvania administrative agency law and are rejected.

### III.    Conclusion

The record contains ample support for the rescission of Petitioner's permits. There is substantial evidence supporting the Board's findings pertaining to lack of direction and momentum at the Hoff VC Site. Testimony from DEP's own witnesses confirmed that there are no immediate or specific plans for remediation. The *de novo* hearing before the Board revealed that significant application information provided by Petitioner, and relied upon by DEP, proved to be unreliable or inaccurate. Leaving the permits in place seems to this Court to be counterintuitive to the Board's uncontested conclusion that DEP should never have issued permits for the operation of a large noncoal quarry next to an uncontained and ongoing HSCA site. Viewed in that light and considering the broad authority that the Board has to ensure that the provisions of the Noncoal Act are carried out, we find rescission of the permits is a remedy that is entirely reasonable and appropriate in these particular circumstances.

We conclude, therefore, that the adjudication by the Board rescinding the permits was supported by substantial evidence and was not an abuse of the Board's discretion.[10]

---

[10] We note that DEP argues that Petitioner waived the following two issues that were raised for the first time on remand: (1) its mining permit "is a property right that cannot be taken away lightly" (Petitioner's Brief at 30-31); and (2) the Board applied the wrong "pollution" standard in the Adjudication by requiring a showing of "no potential for pollution to occur," rather than "no presumptive evidence of potential pollution." (Petitioner's Brief at 44 n.12.)

The Court has reviewed Petitioner's brief and concludes the excerpts from Petitioner's brief, cited by DEP, where it asserts these issues were "raised" cannot be construed as Petitioner's attempt
**(Footnote continued on next page…)**

_____

PATRICIA A. McCULLOUGH, Judge

---

to raise new issues.  Regarding DEP's first contention, on pages 30 and 31 of Petitioner's brief, Petitioner only states:

> Requiring that a permit rescission be supported by substantial evidence dovetails with the rule that a government permit is a property right that cannot be taken away lightly.  *See Young J. Lee, Inc. v. Dep*[*artment*] *of Revenue*, 474 A.2d 266, 270 (Pa. 1983) ("Government licenses generally constitute a form of property insofar as they are an entitlement to engage in a valuable activity.").

Contrary to DEP's contention, Petitioner does not argue that its mining permit is a property right.  It merely cites to the *Young* case in support of its argument that the Board's decision was not supported by substantial evidence.  With regard to DEP's second contention, page 44, footnote 12 of Petitioner's brief states:

> Under Pennsylvania law, a permittee need not show there is "no potential for pollution to occur" to be entitled to permits; the test instead relates to presumptive evidence of potential pollution. *See Birdsboro & Birdsboro Mun. Auth. v. Dep*[*artment*] *of Env*[*ironmental*] *Prot*[*ection*], 795 A.2d 444, 448 (Pa. Cmwlth. 2002); 52 P.S. § 3308(a)(3); 25 Pa. Code § 77.126(a)(3). On remand, [Petitioner] and [DEP] can take steps to harmonize quarry operations with [Hoff VC S]ite issues to minimize, treat and remediate groundwater pollution. A point your Honorable Court emphasized in its Initial Order. Potential steps include monitoring changes (to the number and location of wells and testing frequency), remedial measures (where contamination is detected or increases), permit conditions, and bond requirements. [DEP] also can reassess its obligations under [a]rticle I, [s]ection 27 of the Pennsylvania Constitution on remand.

Nowhere in that footnote does Petitioner argue that the Board applied the wrong standard in the Adjudication by requiring a showing of "no potential for pollution to occur," rather than "no presumptive evidence of potential pollution."  Because DEP is not basing its claims on anything in the actual argument, we reject the waiver argument.

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gibraltar Rock, Inc.,      :
     Petitioner  :
          :
    v.      :  No. 500 C.D. 2020
          :
Pennsylvania Department of  :
Environmental Protection,   :
     Respondent :

## *ORDER*

AND NOW, this 8th day of May, 2024, the April 24, 2020 order of the Pennsylvania Environmental Hearing Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge